**KAYDAN v. NEW YORK LIFE INS. CO.**
**No. 7074.**

Circuit Court of Appeals, Seventh Circuit.
March 8, 1940.

Rehearing Denied April 12, 1940.

Thomas C. Kennedy, of Chicago, Ill., for appellant.

Louis H. Cooke, of New York City, and Samuel O. Givens, Jr., Wendell J. Brown, and Joseph W. Townsend, all of Chicago, Ill., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Plaintiff-appellant instituted suit to recover compensation which his complaint alleged to be due to him for services rendered as an insurance agent of the defendant. The defendant filed an answer to the complaint, but thereafter filed a motion under rule 12 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to strike plaintiff's pleading on the ground that his complaint failed to state a claim upon which relief could be granted; and defendant further requested that judgment be entered for it on the pleadings. The court sustained the motion and ordered plaintiff's complaint to be stricken for failure to state a claim for relief, and judgment on the pleadings was entered for defendant. The propriety of the procedure adopted is not questioned by either party to this appeal; and they agree that the defendant's motion was the equivalent of a demurrer to plaintiff's complaint. We shall assume that the motion, and order pursu-

ant thereto, were timely and in correct form; and that the motion properly presented to the court, as a question of law, the sufficiency of the complaint to state a claim upon which relief could be granted.

Plaintiff's complaint based his claim upon what is designated as a "supplementary contract." The subject matter of the "supplementary contract" is found in a booklet or pamphlet issued by the defendant, such booklet or pamphlet being set out verbatim in the complaint. The booklet contains information for agents, or prospective agents, of the defendant company and purports to explain the meaning of "Nylic", an acrostic of the words in the name of the defendant, New York Life Insurance Co. The reader is informed that the purpose of establishing "Nylic" was to give agents something to work for; to enable the company "to secure good men, educate them, and keep them." According to the text of the pamphlet the word "Nylic" is misunderstood and the sponsor of the pamphlet, the third vice-president of defendant company, states that he is "going to take the liberty once more of going over * * * (the agent's) Nylic contract and giving * * * (him) an idea of what it means in simple language." And the sponsor further states that he is going to call it "Salary" instead of calling it "Nylic."

In the course of the pamphlet emphasis is placed upon the importance of impressing upon a prospective agent that he is entering into a twenty year contract; and what purports to be an illustration of such contract is indicated by the following summary:

1—First 2 years—strictly commission contract.

2—Commencing third year a Salary (Nylic) will be paid in addition to commissions you earn.

3—End of five years Salary will be doubled.

4—End of ten years Salary will be increased 50%.

5—End of fifteen years Salary will be increased 33⅓% over previous five years.

6—End of twenty years you will be entitled to Life Pension.

It will be noted from the foregoing that commencing with the third year "a salary (Nylic) will be paid in addition to commissions." Also at the end of five years the salary will be double, etc. A fair inference from the foregoing is that although agents are to be impressed with the idea that they are entering upon a twenty year contract, yet under "Nylic" they actually begin to receive a salary at the commencement of the third year, in addition to regular commissions.

Another portion of the pamphlet is devoted to an agent's recital of his experiences under Nylic which were so remarkably remunerative that the person to whom he was relating them exclaimed, "I'm paralyzed!"; although he recovered sufficiently to congratulate the lucky agent and to regretfully declare: "And from the bottom of my soul I regret that I didn't do as you did and cast my lot with the New York Life Insurance Company 20 years ago." The agent recites as a fact that at the end of two years, on the basis of insurance written by him, the company began paying $50 a month Nylic; and at the end of the 5 years the company paid him a monthly check of $100 on his first year's business; and that the company kept up this monthly check for five years, etc.

Defendant company, over the signature of its third vice-president, clearly represents to prospective agents that by reason of the system maintained by the company, known as "Nylic", agents receive, in addition to regular commissions, additional "Salary" beginning with the third year of service. The pamphlet also contains the statement: "If you want any additional information regarding this see your agency director;" and this statement is especially significant since the plaintiff alleges that the agency director represented the defendant company at the time the "supplementary contract" was made.

The complaint states that "under said contract and supplementary agreement he (plaintiff) entered into the employ of said defendant on the 21st day of February, 1931, and that at the time he entered into said employment with the said defendant company, the said company through its agent namely, Ray Elmer, agency organizer and Frederick Bruchholz, agency director of said defendant company, gave to this plaintiff the supplementary agreement last above described entitled Nylic for Agents, and did then and there on behalf of said defendant company represent to this plaintiff that all of the benefits as therein outlined would be paid to this plaintiff as additional commission and which would be in addition to the commission due and pay-

able to this plaintiff under his original contract dated the 21st day of February 1931, and relying upon said statements and representations this plaintiff did enter into and upon his duties as agent for the defendant company under said agreement on the 21st day of February, 1931, and continued said employment until to-wit, the 5th day of February, 1938, when said defendant by written notice to this plaintiff under Section 20 · of the contract herein above set forth notified this plaintiff on the 5th day of January, 1938, that his services would terminate within thirty (30) days thereafter as provided in said Section 20 of said contract * * *."

It is defendant's contention that there are sufficient references in the pamphlet upon which the plaintiff relies to disclose that the alleged "Nylic" agreement between plaintiff and defendant is subject to terms and conditions which are contained in another publication or pamphlet. In the words of the defendant: "In its entirety this illustrative material pleaded by the plaintiff shows that the Company's *promise* or *word* with reference to Nylic compensation was that contained in the official 'Nylic No. 3' *contract* which the plaintiff did not for some reason plead." (our italics) But the references in the booklet to "Nylic No. 3" do not indicate that there is a separate and special Nylic contract identifiable as "Nylic No. 3" contract. The most completely descriptive statement in the complaint respecting "Nylic No. 3" is the following: "For official particulars relative to the benefits and conditions of Nylic —see Nylic No. 3, a system of benefits for persistent and successful agents." In the sentence preceding the foregoing it is stated that the story of the successful agent is to illustrate "the practical workings of the company's Nylic agreement", but is not a "guarantee in any sense of the word."

The obvious import of the foregoing is that the company is not guaranteeing that every agent can have as rich returns as the agent whose Nylic experience is the subject of the illustration; and that to avoid any inference of such a guarantee the reader is referred to Nylic No. 3 for the particulars relating to the benefits and the conditions which determine the amount of income under Nylic; and the reference to Nylic No. 3 fairly cannot be taken to be notice of anything more than that each agent's returns depend generally upon the amount of business written as well as the number of years service with the company, which conditions are stated in a general way in the Nylic pamphlet which is included in the complaint. For example it is made clear in the pamphlet that the amount will vary with the type of policies written by the agent, with the terms of the agent's primary contract, especially respecting the amount of commission, and with other variable factors. But the pamphlet is devoid of any indication that the *right* to Nylic benefits is conditioned upon these factors. In the pamphlet is a personal memorandum to all agency men which sets out the "estimated total yearly income to an agent who produces $200,000 worth of new business each year" for a period of twenty years.

The substance of the contentions of defendant is that if all the facts relating to the right of agents to receive Nylic benefits were before the court it would appear that the plaintiff in this case has no claim. And in support of the foregoing defendant relies upon the existence of a "Nylic No. 3 contract" as · distinguished from a Nylic contract or agreement. But, as stated above, the complaint, including the Nylic pamphlet reproduced therein, does not reveal the existence of a Nylic No. 3 contract but does indicate the existence of a Nylic No. 3 pamphlet which differs from the Nylic pamphlet of the complaint by reason of the fact that it contains a more complete and detailed statement of "official particulars relative to the benefits and conditions of Nylic." There is no suggestion that the "benefits and conditions of Nylic" as set out in Nylic No. 3 pamphlet differ in kind from the benefits and conditions of Nylic as set out in the pamphlet in the complaint. The only reasonable conclusion from the references to "Nylic No. 3" is that the Nylic No. 3 pamphlet furnishes a more particularized statement of the benefits and conditions which are set out in the Nylic pamphlet of the complaint. But if in fact there are provisions in "Nylic No. 3" pamphlet, which bind the plaintiff and destroy his claim under the alleged Nylic agreement set out in the complaint, the defendant is free to make such defense.

We conclude that the District Court erred in sustaining the defendant's motion and in ordering plaintiff's complaint to be stricken for failure to state a claim for relief and in entering judgment on the pleadings for defendant. The judgment is reversed and the cause remanded with directions to overrule defendant's motion and

to take further proceedings not inconsistent with this opinion.

Reversed.